Rockingham
No. 85-084

EDWIN C. KELLY & a.

v.

NEW HAMPSHIRE PARI–MUTUEL COMMISSION

August 16, 1985

*Brian D. Kenyon,* of Exeter, and *Fred C. Scribner, III,* of Cambridge, Massachusetts (*Mr. Scribner* on the brief and orally), for the plaintiffs.

*Stephen E. Merrill,* attorney general (*Peter T. Foley,* assistant attorney general, on the brief and orally), for the State of New Hampshire Pari-Mutuel Commission.

BROCK, J. The State of New Hampshire Pari-Mutuel Commission (the Commission) appeals a superior court ruling that because it granted New Hampshire jockey licenses to the plaintiffs and improperly revoked those licenses, the Commission is now enjoined from considering the illegal activities of the plaintiffs in New Jersey for purposes of any future license applications. For the reasons that follow, we reverse.

The facts of this case are not in dispute. In January 1982, following their participation in an undercover scheme known as "Operation Glue" conducted by the New Jersey State Police, the plaintiffs, Edwin Kelly, Abad Cabassa, and Rudolph Deljudice, were indicted by a New Jersey grand jury for conspiracy to rig a publicly exhibited contest and for accepting a bribe in violation of various New Jersey laws. The indictments were later dismissed following a finding that the scam operated by New Jersey officials in order to apprehend jockeys, trainers and owners who were violating racing laws was "outrageous governmental behavior."

In May 1983, Cabassa and Deljudice applied for jockey licenses in New Jersey. Their applications were denied by the New Jersey Racing Commission because, as a result of their involvement in "Operation Glue," they lacked sufficient integrity to be licensed in New Jersey. Kelly has not reapplied for a license in New Jersey since the suspension of his license in 1982.

In the spring and summer of 1984, all three plaintiffs applied for jockey licenses at Rockingham Park in Salem. After filing written applications, they were informally interviewed by Rockingham Park stewards who, although aware of the plaintiffs' involvement in "Operation Glue," made no further inquiry and recommended the plaintiffs for licensure. Based on the stewards' recommendations, the Commission issued each plaintiff a jockey license. N.H. CODE ADMIN. RULES Ra. § 324.05.

After the licenses were issued, the Commission learned of the nature of the plaintiffs' alleged involvement in "Operation Glue." The Commission also learned that Cabassa and Deljudice were denied jockey licenses in New Jersey in 1983. A hearing on the revocation of the licenses was held at which each of the plaintiffs admitted that he had *agreed* to "hold" a horse, but claimed he had not actually intended to carry out his agreement to do so. On October 5, 1984, the Commission revoked the plaintiffs' licenses for lack of sufficient integrity to be licensed in New Hampshire. It also ruled that the plaintiffs could not reapply for jockey licenses until January 1, 1986, after which time their improper conduct in New Jersey would no longer be considered for future applications.

The plaintiffs appealed, and the Superior Court (*Gray*, J.) approved the Master's (*R. Peter Shapiro*, Esq.) ruling that the entrapment defense was not applicable and that therefore the Commission could have properly considered evidence of the plaintiffs' illegal actions in New Jersey before it *initially* granted the jockey licenses. The master also found, however, that the Commission, having once issued the licenses, was estopped from subsequently revoking them, and further, was enjoined from considering the plaintiffs' previous improper conduct in New Jersey upon review of any future license applications. The Commission appeals, and the plaintiffs have filed a cross-appeal concerning the applicability of the entrapment defense.

 Before discussing the issues, we wish to point out that we have stated on a prior occasion that participation in horse racing is "a privilege such as the State may grant or withhold at pleasure. . . . [Horse racing is a] private enterprise which, of its nature, is not only privileged, but which presents a social problem properly com-

ing under the exercise and jurisdiction of the police power of the State and which requires strict regulation and supervision." *North Hampton &c. Assn. v. Commission*, 94 N.H. 156, 159, 48 A.2d 472, 475 (1946). The Commission's regulatory powers, therefore, are to be distinguished from those of other regulatory agencies because horse racing is "an activity which the State may prohibit altogether, not one which it may merely regulate." *Ratti v. Hinsdale Raceway*, 109 N.H. 270, 272, 249 A.2d 859, 861 (1969).

We first consider whether evidence obtained during an entrapment scheme in New Jersey is admissible in an administrative proceeding in New Hampshire. The master relied on *United States v. Janis*, 428 U.S. 433, 446 (1976), which held that the "prime purpose of the [exclusionary] rule . . . is to deter future unlawful police conduct." As a result, the court did not extend the rule to forbid the use, in the civil proceeding of one sovereign, of the evidence obtained by the enforcement agency of another sovereign. The rationale of *Janis* is that since there is an insufficient likelihood of deterring the conduct of State police by excluding evidence in another sovereign, the exclusionary rule should not extend to such proceedings. *Id.* at 446–48, 456–58.

■■ The plaintiffs argue that proceedings to revoke a professional license are quasi-criminal and therefore the *Janis* rule does not apply. We disagree. Some State courts have permitted the use of an entrapment defense in proceedings involving the revocation of medical or dental licenses. *See Patty v. Board of Medical Examiners*, 9 Cal. 3d 356, 107 Cal. Rptr. 473, 508 P.2d 1121 (1973). In such instances, however, the entrapment was committed by the administrative agency's own investigators. Where an administrative body of another State in an entirely different proceeding seeks to admit evidence not admissible in a criminal proceeding, the entrapment defense is inapplicable. *Kee Wong v. State Bar*, 15 Cal. 3d 528, 531, 125 Cal. Rptr. 482, 484, 542 P.2d 642, 644 (1975). This is especially true when the function of the administrative or governmental agency is more protective than punitive. *Rodriguez v. United States*, 534 F. Supp. 370, 373–74 (D.P.R. 1982). We hold, therefore, that the master correctly concluded that the entrapment defense did not apply to the Commission's consideration of the plaintiffs' applications for jockey licenses.

We next consider whether the superior court erred in enjoining the Commission from considering the plaintiffs' activities in New Jersey in any subsequent applications for jockey licenses before January 1, 1986. The master ruled that the Commission had no authority under RSA chapter 284 or the New Hampshire rules of rac-

ing to allow it to issue licenses to the plaintiffs on the basis of the recommendations of the stewards, and to later reconsider its decision based on evidence initially unknown or unavailable to the Commission.

The Commission's authority to revoke the plaintiffs' licenses following the granting of those licenses is derived from RSA chapter 284. It may revoke jockey licenses "at any time for cause." RSA 284:19. In addition, the New Hampshire rules of racing, promulgated by the Commission itself, authorize the Commission to "revoke any license if the holder . . . has violated any rule or regulation . . . governing his conduct . . . or where such conduct is objectionable, obnoxious or detrimental to the best interest of racing." N.H. CODE ADMIN. RULES Ra. § 324.08.

■ The master found N.H. Code Admin. Rules Ra. § 324.08 inapplicable in this instance on the theory that once the Commission has issued a license, it may not later reconsider its decision using such information as might not have initially been available to it. Such a reading of N.H. Code Admin. Rules Ra. § 324.08 assumes that there is a time limit imposed on the Commission for discovery of "objectionable" conduct. We find nothing in the rules of racing and specifically in N.H. Code Admin. Rules Ra. § 324.08 to support this theory. Such a reading of the rules of racing as they apply to the Commission's statutory authority under RSA chapter 284 also ignores the Commission's "ultimate control" of the regulation of wagering and racing. *Seabrook v. Perkins*, 112 N.H. 37, 40, 288 A.2d 688, 690 (1972). The rules of racing do not limit the Commission's authority to revoke a license, nor do they provide exclusive grounds for revocation.

■ The master also found that the Commission was estopped from revoking its prior approval of the licenses because, having delegated approval authority to the stewards and having itself granted the licenses, it could not review the issuance of these licenses. Although this court has recognized the use of estoppel against a municipal corporation under certain conditions, private parties when dealing with government officials are charged with "notice of the extent and limits of their authority" and must "inquire into the power of the corporation or its officers." *City of Concord v. Tompkins*, 124 N.H. 463, 470, 471 A.2d 1152, 1156 (1984). The plaintiffs' application forms clearly indicated that "the [license] may be at any time revoked, cancelled, temporarily suspended or withdrawn by the Commission." Also, given the Commission's broad grant of authority under RSA chapter 284, the plaintiffs had notice

of the extent of the Commission's authority. *Id*. at 473, 471 A.2d at 1158.

We therefore hold that the master erred in ruling that the Commission improperly revoked the plaintiffs' licenses. We also hold that the plaintiffs, according to the original ruling of the Commission, are ineligible to apply for jockey licenses until January 1, 1986, after which time their conduct in New Jersey will not be considered with respect to future applications.

*Reversed.*

All concurred.