**NEW SUFFOLK DOWNS CORP.**

v.

**ROCKINGHAM VENTURE, INC.**

Civ. No. 87–59–D.

United States District Court,
D. New Hampshire.

April 2, 1987.

Hill, Wynne, Troop & Meisinger by Louis M. Meisinger, C. Dennis Loomis, Los Angeles, Cal., Lynch, Brewer, Hoffman & Sands by Alan R. Hoffman, Ann Hoffman, Boston, Mass., Sheehan, Phinney, Bass & Green, P.A. by Douglas G. Verge, Manchester, N.H., for New Suffolk Downs Corp.

Devine, Millimet, Stahl & Branch by Richard C. Nelson, Daniel J. Callaghan,

Manchester, N.H., for Rockingham Venture, Inc.

## OPINION AND ORDER

DEVINE, Chief Judge.

Horse racing, the closely regulated "sport of kings",[1] is the source of this litigation. Impetus thereto is said to arise from the federal statute known as the "Interstate Horseracing Act of 1978" ("Act"), 15 U.S.C. §§ 3002–3007. The plaintiff's motion for partial summary judgment is before the Court.[2] The relief sought is by way of injunction and declaratory judgment.

Plaintiff New Suffolk Downs Corporation ("Suffolk") operates a thoroughbred horse racing track in Massachusetts. Defendant Rockingham Venture, Inc. ("Rockingham"), operates a horse racing track in New Hampshire. The New Hampshire track is geographically located approximately thirty miles from the Massachusetts track.

This action was initially filed in the United States District Court for the Central District of California, from whence it has been transferred. Originally named as a defendant, in addition to Rockingham, was Oak Tree Racing Association, Inc. ("Oak Tree"), a California corporation which conducts horse races at Santa Anita Park in that state. Another initially named defendant was Breeders' Cup Limited ("Breeders"), which had entered into a contract with Oak Tree to run certain races at Santa Anita Park. A preliminary injunction issued by the California federal court was stayed on expedited appeal by the Ninth Circuit; subsequently, Oak Tree and Breeders were dismissed from the litigation, and the amended complaint names only Rockingham as a party defendant.

The original action sought to prevent Oak Tree and Breeders from allowing Rockingham the opportunity to simulcast and permit off-track betting on the so-called "Breeders' Cup" races from Santa Anita Park on November 1, 1986. Suffolk claimed that its consent to Rockingham to permit such activity was a condition precedent under the Act to the permission afforded Rockingham by Oak Tree and Breeders to simulcast and permit off-track betting on such races. As those races have been held, it would appear on its face that this lawsuit is moot, but I find that the litigation presents issues which are not moot, as they are "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Otherwise stated, "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); *cited and quoted in Anderson v. Cryovac, Inc.,* 805 F.2d 1, 4 (1st Cir.1986), *and Pallazola v. Rucker,* 797 F.2d 1116, 1129 (1st Cir.1986).

Rockingham has in the past, and indicates that it will in the future, run off-track betting on races conducted at tracks which are not located in New Hampshire. Suffolk contends that the Act prevents Rockingham from doing so unless it gets prior consent from Suffolk and that if such consent is withheld Rockingham may not conduct such off-track betting operations. More importantly, Suffolk here contends that the Act gives to it an implied private right of action to enforce its mandates. Before examining these contentions, the Court believes it wise to detail the primary interest of the individual states in the regulation of gambling with respect to horse racing.

Before discussing the issues, we wish to point out that we have stated on a prior occasion that participation in horse racing is "a privilege such as the State may grant or withhold at pleasure.

---

1. Organized horse racing dates from the twelfth century in England, where royalty fostered the sport. It is still known popularly as the "sport of kings". *New Columbia Encyclopedia* 1273 (1975).

2. As I find and rule that oral argument would not be of further assistance, I decide the issues presented on the documents filed. Local Rule 11(g).

[Horse racing is a] 'private enterprise which, of its nature, is not only privileged, but which presents a social problem properly coming under the exercise and jurisdiction of the police power of the State and which requires strict regulation and supervision.'" *North Hampton etc. Assn. v. Commission*, 94 N.H. 156, 159, 48 A.2d 472, 475 (1946). The Commission's regulatory powers, therefore, are to be distinguished from those of other regulatory agencies because horse racing is "an activity which the State may prohibit altogether, not one which it may merely regulate." *Ratti v. Hinsdale Raceway*, 109 N.H. 270, 272, 249 A.2d 859, 861 (1969).

*Kelly v. New Hampshire Pari-Mutuel Comm'n*, 127 N.H. 298, 300–01, 499 A.2d 995, 997 (1985).

Indeed, Congress expressed its awareness of the primary interest of the individual states in regulation of betting on horse races in the following findings set forth in its preamble to the Act:

(1) the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders;

. . . .

[but] (3) in the limited area of interstate off-track wagering on horseraces, there is a need for Federal action to ensure States will continue to cooperate with one another in the acceptance of legal interstate wagers.

15 U.S.C. § 3001(a).

In simplified overview, the Act seeks to bolster such cooperation by prohibiting off-track betting unless consent is obtained from the racetrack at which the race to be bet upon is held ("host racing association"[3]); the racing commission with jurisdiction over that track ("host racing commission"[4]); and the racing commission with jurisdiction over the location at which the off-track betting is to take place ("off-track racing commission"[5]). 15 U.S.C. § 3004(a). In addition, the off-track betting office[6] "shall obtain the approval of . . . (A) all currently operating tracks within 60 miles of such off-track betting office; and (B) if there are no currently operating tracks within 60 miles then the closest currently operating track in an adjoining state." 15 U.S.C. § 3004(b)(1)(A), (B).

Excepted from such approval are off-track betting offices which are located in states "with at least 250 days of on-track parimutuel horseracing a year [which] may accept interstate off-track wagers for a total of 60 racing days and 25 special events a year" without procuring such approval. 15 U.S.C. § 3004(b)(2).

The Act vests its enforcement by medium of civil actions brought by the host state,[7] host racing association, or horsemen's group.[8] 15 U.S.C. § 3006(a). Concurrent jurisdiction over such civil actions is had in both federal and state courts. 15 U.S.C. § 3007. If damages are sought, they are to be computed based on formulas derived from the betting systems in use at either the host racing system or the off-track betting office. 15 U.S.C. § 3005.

Although it is neither a host state, a host racing association, or a horsemen's group

---

3. The term "'host racing association' means any person who, pursuant to a license or other permission granted by the host State, conducts the horserace subject to the interstate wager." 15 U.S.C. § 3002(9).

4. The term "'host racing commission' means that person designated by State statute or, in the absence of statute, by regulation, with jurisdiction to regulate the conduct of racing within the host State." 15 U.S.C. § 3002(10).

5. The term "'off-track racing commission' means that person designated by state statute or, in the absence of statute, by regulation, with jurisdiction to regulate off-track betting in that State." 15 U.S.C. § 3002(11).

6. The term "'off-track betting office' means any location within an off-track State at which off-track wages are accepted." 15 U.S.C. § 3002(8).

7. The term "'host state' means the State in which the horserace subject to the interstate wager takes place." 15 U.S.C. § 3002(5).

8. The term "'horsemen's group' means, with reference to the applicable host racing association, the group which represents the majority of owners and trainers racing there, for the races subject to the interstate off-track wager on any racing day." 15 U.S.C. § 3002(12).

as hereinabove defined in the Act, Suffolk contends that it is entitled to assert an implied private right of action to enforce the provisions of the Act. Its argument is based on the general principles set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), which in relevant terms sets forth the test as follows:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ..., that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." ... (emphasis in original) (citations omitted).

*Latinos Unidos de Chelsea v. Secretary of Housing,* 799 F.2d 774, 792 (1st Cir.1986).

However, in considering a claim that Congress intended to create a private right of action in a federal statute which omits from its terms the party asserting such right of action, the key to the inquiry is the intent of the legislature. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981); *Texas Indus., Inc. v. Radcliffe Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors,*

*Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). Statutes which create entirely new rights are obviously not enacted in the context in which implied private remedies have already been recognized by the courts. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 541, 104 S.Ct. 831, 841, 78 L.Ed.2d 645 (1984). The Court looks first to the statutory language, with particular emphasis on the provisions made therein for enforcement and relief, and then reviews the legislative history and other traditional aids of statutory interpretation in seeking to determine congressional intent. *Middlesex County Sewerage Auth. v. Sea Clammers, supra,* 453 U.S. at 13, 101 S.Ct. at 2622–23.

Suffolk correctly argues that once a host state, the host racing association, and its horsemen's group have entered into a contract (providing suitable compensation) to permit off-track simulcasts and betting on its races, it has no further interest in litigating to enforce the Act. This is because the statute was created for the "especial benefit" of those groups to insure that states which desire to run off-track betting operations do not pirate the races of the host state without providing adequate compensation therefor. And in suggesting that only the "currently operating tracks", whose approval is required pursuant to the provisions of 15 U.S.C. § 3004(b)(1)(A), (B), have a remaining interest in the enforcement of the Act, the plaintiff here blinks at the requirement that the off-track racing commission, 15 U.S.C. § 3004(a)(3), is required to grant consent to off-track betting operations within its jurisdiction.

As a matter of fact, that is precisely what here happened. When Suffolk withheld its consent to Rockingham to operate off-track betting, the New Hampshire Parimutuel Commission[9] denied consent to Rockingham to do so, and Rockingham then challenged this ruling in the state

---

9. The New Hampshire Parimutuel Commission is the authority charged by law with the regulation of gambling on horse races, including off-track wagering in New Hampshire. New Hampshire Revised Statutes Annotated ("RSA")

chapter 284 (and Supp.1986). Its "powers, duties and rights" expressly include all such "conferred upon state commissions" under the Act. RSA 284:6–a III (Supp.1986).

superior court. That court overruled the Parimutuel Commission, finding that the Act excepted such events from the consent required by Suffolk.[10]

The Court has reviewed the legislative history of the Act, which is set forth in 1978 U.S.Code Cong. & Admin.News 4132–54. I do not find persuasive the snippets therefrom cited by Suffolk in support of its argument. I find significant the fact that where damages are awarded for violations of the Act, they are not computed in accordance with any losses suffered by tracks within sixty miles of the off-track betting office, but are based on formulas computed on wagers had either at the location of the host racing association or at the off-track betting system. 15 U.S.C. § 3005. Surely, if Congress intended that tracks within sixty miles of the off-track betting location were to recover damages, they would have adopted a formula to include damages sustained by such tracks.

■ In sum, I find and rule that Suffolk is not one of the class for whose especial benefit the Act was passed; that there is no indication of legislative intent, explicit or implicit, to create a remedy such as it here seeks; that it would be inconsistent with the underlying purposes of the legislative scheme to imply such a remedy in behalf of Suffolk; and that, inasmuch as the Act is a limited area of federal exercise of jurisdiction over an area primarily reserved to the states, it would be inappropriate to infer a cause of action in behalf of Suffolk based on this statute. *Latinos Unidos de Chelsea v. Secretary of Housing, supra,* 799 F.2d at 792.

■ Invoking diversity jurisdiction, Suffolk also claims that the advertising by Rockingham of its simulcasts of off-track races with betting thereon is a violation of an unfair competition statute passed by the Legislature of the Commonwealth of Massachusetts. Mass.Gen.Laws ch. 93A.

However, the complaint (paragraph 48) grounds this claim on Suffolk's position that Rockingham is in violation of the Interstate Horseracing Act. As I have here found that Suffolk is not vested with an implied private right to proceed under said Act, I likewise dismiss the pendent claim.

The motion for partial summary judgment is herewith denied, and the action is herewith dismissed for lack of jurisdiction inasmuch as Suffolk possesses no right to proceed under the Act.

SO ORDERED.

---

10. Suffolk contends that it is not bound by the ruling of the superior court of New Hampshire (which apparently was not appealed by the Parimutuel Commission), as it was not a party thereto. Suffolk also challenges the validity of such ruling, but the Court finds it unnecessary to consider these issues, in light of the resolution here arrived at. Otherwise stated, the Court outlines the incident as demonstrative of the operation of the Act with respect to cooperation between and among racing commissions in various states and does not rule on the validity of the result reached by the New Hampshire court.