**HIALEAH, INC., a Florida corporation, and Hialeah Park, Inc., a Florida Corporation, Plaintiffs,**

v.

**FLORIDA HORSEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION, INC., a dissolved Florida corporation; Kent H. Stirling, individually and as President; Scott Savin, individually and as First Vice President and Treasurer; James R. Champman, individually and as Second Vice President; William P. White, individually and as Secretary; J.C. Barnhill; Jacqueline Brittain; Vincent Cincotta; Andrew Colando; O.S. Edwards; Manuel Estevez; Frank Gomez; Jose Mendez; Shawn Musgrave; Linda Peterson; R.J. Richards, Jr.; Emanuel Tortora; and Ralph Ziadie, individually and as directors of Florida Horsemen's Benevolent & Protective Association, Inc., a dissolved Florida corporation, Defendants.**

No. 94–0480–CIV.

United States District Court, S.D. Florida.

Aug. 25, 1995.

Fred E. Karlinsky, Maria Elena Abate, Colodny, Fass & Talenfeld, P.A., Fort Lauderdale, Florida, for Plaintiffs.

Bruce David Green, Bruce David Green, P.A., Fort Lauderdale, Florida, Steven Wisotsky, Steven Wisotsky, P.A., Miami, Florida, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

NESBITT, District Judge.

This cause comes before the Court upon Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted, filed March 28, 1995 (D.E. # 78), and Plaintiffs' Motion to Dismiss Count I of First Amended Counterclaims for Damages, In-

junction and Declaratory Relief for Failure to State a Claim Upon Which Relief Can be Granted, filed May 27, 1994 (D.E. # 26).

## I. FACTUAL BACKGROUND

### A. Simulcasting

According to Plaintiff's Second Amended Civil Complaint, the parties are as follows: Plaintiff Hialeah, Inc. ("Hialeah") is the operator of Hialeah Park Race Track, a thoroughbred horseracing track located in South Florida. Defendant Florida Horsemen's Benevolent & Protective Association, Inc. ("FHBPA") is a not-for-profit group that represents the interests of horse owners and trainers at Florida's thoroughbred horseracing tracks, including Hialeah Park. The remaining individually named Defendants are either officers or directors of Defendant FHBPA.

This action stems from Plaintiff Hialeah's desire to transmit simulcasts of horseraces held at Hialeah Park to betting places outside of the state of Florida. These out of state betting establishments—termed "off-track betting offices"—would then pay a portion of their proceeds to Plaintiff Hialeah for the permission to receive the transmission of, and to bet on, races held at Hialeah Park.

Congress was concerned about the effects such interstate transmissions would have on attendance at small horse race tracks that were located near off-track betting offices, as these off-track betting offices could receive transmissions of and take bets on races held at much more prestigious tracks involving a higher caliber of horses than was commonly found at small local tracks. *See Alabama Sportservice, Inc. v. National Horsemen's Benevolent & Protective Ass'n,* 767 F.Supp. 1573, 1578 (M.D.Fla.1991). Congress also appeared concerned with the possibility that off-track betting offices could take bets on simulcasted horse races without compensating either the track where the race occurred or the horse owners. In addition, Congress recognized that, "[I]n the limited area of interstate off-track wagering on horse races, there is a need for Federal action to ensure States will continue to cooperate with one another in the acceptance of legal interstate

wagers." 15 U.S.C. § 3001(a)(3) (1995). Consequently, in 1978 Congress passed the Interstate Horseracing Act, 15 U.S.C. § 3001, *et seq.* ("the IHA"), to regulate such wagering, as well as to "further the horseracing and legal off-track betting industries in the United States." § 3001(b).

### B. The IHA

The IHA mandates that before betting can be accepted in another state on a simulcasted horserace, the consent of a number of interested parties must first be obtained.

Title 15, U.S.C. § 3004(a) prohibits such wagering at ["off-track betting offices"] unless three parties consent: (1) the track which conducts the live race [termed the "host racing association"]; (2) the racing commission having jurisdiction to regulate racing within the state where the live race occurs [the "host racing commission"]; and (3) the racing commission having jurisdiction over race wagering in the state where the simulcast occurs [the "off-track racing commission"].

*Sterling Suffolk Racecourse Limited Partnership v. Burrillville Racing Ass'n, Inc.,* 989 F.2d 1266, 1267 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993). In addition, and of most importance to the action before this Court, the IHA requires that, as a condition precedent to obtaining the consent of the host racing association, the host racing association must also "have a written agreement with the horsemen's group." § 3004(a)(1)(A). The "horsemen's group" is defined by the IHA as "the group which represents the majority of owners and trainers racing ..." at the horserace track. § 3002(12).

Two sections of the IHA discuss the enforcement of this consent requirement. First, the IHA states in a section entitled "Liability and damages" that, "Any person accepting an interstate off-track wager in violation of this chapter shall be civilly liable for damages to the host State, the host racing association and the horsemen's group." § 3005. In addition, the IHA provides, under a section entitled "Civil Action," that, "The host State, the host racing association, or the horsemen's group may commence a civil action against any person alleged to be

in violation of this chapter, for injunctive relief to restrain violations and for damages in accordance with section 3005 of this title." § 3006.

### C. The Instant Action

#### 1. Background

In the action presently before the Court, Plaintiff Hialeah alleges that it is a "host racing association" as defined by the IHA. (2nd Am.Compl. ¶ 6.) Plaintiff Hialeah also states that Defendant FHBPA "asserts that it is a 'horsemen's group,' " as defined by the IHA (2nd Am.Compl. ¶ 7.)[1]

The underlying basis for Plaintiff Hialeah's action is that, because of longstanding hostilities between Plaintiff Hialeah and Defendant FHBPA, "Defendants are operating contrary to their best economic interest in a predatory attempt to injure the Plaintiff's business or property." (2nd Am.Compl. ¶ 41.) One of the main ways in which Defendants are carrying out this objective, Plaintiff Hialeah believes, is by unjustifiably withholding their consent to the simulcasting for betting purposes of races held at Hialeah Park.[2]

Before Hialeah Park's 1994 racing season, Plaintiff Hialeah entered into twenty-five contracts with off-track betting offices for the simulcasting of races held at Hialeah Park Race Track.[3] Defendant FHBPA, however, pursuant to the IHA, initially refused to give its consent to Plaintiff Hialeah to simulcast Hialeah Park races to these twenty-five off-track betting offices until Plaintiff Hialeah agreed to enter into "Paragraph H" of a contract between Plaintiff Hialeah and Defendant FHBPA. Paragraph H is "a provision in a proposed agreement between the parties which limited the amount of 'takeout' . . . Plaintiff would be able to use to cover its operating expenses and attempt to make a profit." (2nd Am.Compl. ¶ 50.) The "take-

out" is defined by Plaintiff Hialeah as the "total pari-mutuel handle to cover its operating expenses and account for profit." (2nd Am.Compl. ¶ 23.) In sum, then, Plaintiff Hialeah alleges that, as part of its scheme to destroy Plaintiff's business, Defendant FHBPA has refused to give consent to simulcast races for betting purposes unless Plaintiff Hialeah agrees to be restricted to what Hialeah believes is an unfairly small amount of the takeout. Without a suitable takeout amount, Plaintiff Hialeah alleges that it will be unable to maintain its facilities, to make a profit, and to stay in business.

In addition, Plaintiff Hialeah has also alleged that Defendant FHBPA has attempted to damage Plaintiff Hialeah's business by refusing to send FHBPA-member horses to Plaintiff Hialeah's race track. Without horses, of course, Plaintiff Hialeah cannot run races, cannot take bets, and cannot derive suitable income to maintain its operations. (Compl. ¶¶ 35–37.)

In an attempt to bypass the FHBPA and obtain the consent to simulcast races for betting purposes from the individual horse owners and trainers themselves, Plaintiff Hialeah has required individual horsemen to give such consent when they rent a stall from Plaintiff Hialeah or when they enter their horse in a race.

In applying for a stall at Plaintiff's racetrack to stable a horse, a release must be completed by each horse owner or trainer authorizing Plaintiff to "televise, or authorize or license the televising of horse racing . . . at the Track . . . without compensation". . . . In addition, the entry blank for all horses entered by trainers or owners in a race at the Plaintiff's facility also authorizes Plaintiff to "televise, or authorize or license the televising of, with or

---

1. The Court notes that although Plaintiff Hialeah seems reluctant to admit that Defendant FHBPA is the relevant "horsemen's group" as defined by the IHA, Plaintiff Hialeah does not contest the status of Defendant FHBPA as the relevant horsemen's group in any of Plaintiff's moving papers.

2. This refusal by Defendant FHBPA to give consent to the simulcasts has been referred to by Defendants as the "horsemen's veto."

3. Although Plaintiff Hialeah has not affirmatively asserted that it has obtained the necessary consent from the appropriate "host racing commission" and the "off-track racing commissions" to simulcast the races, Defendants have also not asserted that Plaintiff Hialeah has failed to obtain the consent of these agencies.

without consideration therefor, certain horse races to be conducted in its racing plant."

(2nd Am.Compl. ¶¶ 66–67.)

### 2. The 1994 Racing Season

Having not received Defendant FHBPA's consent on the eve of the 1994 racing season, Plaintiff Hialeah brought suit against Defendants on March 11, 1994, seeking, along with other relief, a declaration that the IHA is unconstitutional. Plaintiff Hialeah also sought an emergency preliminary injunction "prohibiting Defendants from further unreasonable withholding of their consent required under the [IHA] . . . ." (Emergency Mot. for Prelim.Injunctive Relief at 1–2.) After a hearing held before the Court on March 14, 1994, Defendant FHBPA agreed to give its consent to simulcasting for betting purposes after Plaintiff Hialeah agreed to enter into the above-mentioned Paragraph H.

Subsequent to this agreement, the parties have had continuous disputes regarding the amount of takeout Plaintiff Hialeah should receive from simulcasting revenue. As a further development bearing on this ongoing action, soon after Plaintiff Hialeah originally filed its action, the Sixth Circuit Court of Appeals held in a similar suit that the IHA *is* constitutional. *Kentucky Division, Horsemen's Benevolent & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406 (6th Cir.1994). These circumstances compelled Plaintiff Hialeah to amend its Amended Complaint.

In its Second Amended Complaint, Plaintiff Hialeah alleges three causes of action: (1) for violation of section 1 of the Sherman Antitrust Act; (2) for violation of the Florida Antitrust Act of 1980; and (3) for declaratory relief that the IHA is unconstitutional as applied to Plaintiff Hialeah. Defendants have moved to dismiss Plaintiff's entire Second Amended Complaint.

Defendants have also filed a Counterclaim alleging first, a count seeking damages for violation of the IHA, and second, declaratory judgments that its horsemen's veto is valid and that Plaintiff's actions to require the giving of consent in its stall and entry applications is a violation of the IHA. In response, Plaintiff Hialeah moved to dismiss Count I of Defendants Counterclaim brought for violation of the IHA.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The Court, however, is confined to a review of the allegations pled in the complaint, must accept those allegations as true, and must resolve any factual issues in a manner favorable to the nonmovant. *See Quinones v. Durkis,* 638 F.Supp. 856, 858 (S.D.Fla.1986). Thus, a claim may be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Defendant FHBPA's Motion to Dismiss

The primary basis for Defendants' Motion to Dismiss is that Plaintiff Hialeah has failed to allege anti-competitive behavior on the part of Defendants as required under section 1 of the Sherman Antitrust Act. Defendants also raise two prudential issues, which the Court must first address.

#### 1. Mootness

■ Initially, Defendants argue that this case is now moot, as Defendant FHBPA has already given its consent to Plaintiff Hialeah to simulcast races for betting purposes during the 1994 racing season. The parties agree that those races were, indeed, simulcasted for betting purposes, and therefore any cause of action against Defendant FHBPA for *failure* to give its consent to the simulcasting is now moot.

Although the 1994 races and simulcasting may have already occurred—thus apparently terminating the controversy between the parties—an exception to the mootness doctrine exists for situations which are "capable

of repetition, yet evading review." *See New Suffolk Downs Corp. v. Rockingham Venture, Inc.*, 656 F.Supp. 1190, 1191 (D.N.H. 1987) (quoting *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)). When a similar argument regarding mootness was brought in an action involving the IHA—where the racing season had already been completed at the time the court reviewed a motion for summary judgment—the District Court for the District of New Hampshire held that the "capable of repetition, yet evading review" exception to the mootness doctrine applied because the case met the exception's following criteria: " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Suffolk Downs*, 656 F.Supp. at 1191 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975)) (other citations omitted).

The instant action also meets both of these criteria. The 58–day 1994 racing season is certainly too short a duration to fully litigate an action, and Plaintiff Hialeah believes that it will be subject to Defendant FHBPA's refusal to give consent before each following year's racing season. Consequently, this is a classic case for application of the "capable of repetition, yet evading review" exception to the mootness doctrine, and the Court, therefore, finds that the doctrine of mootness does not bar this action.

### 2. Standing

■ Second, Defendants argue that Plaintiff Hialeah lacks standing to bring its action. Defendants explain their argument in this way:

Plaintiff has not and will not suffer injury as transmission of racing from Hialeah Race Track is not prohibited, nor is wagering on the racing at Hialeah Race Track prohibited. Rather, wagering is only prohibited at remote "off-track betting systems," which are the only parties who would, could or might suffer a cognizable injury as a result of their inability to accept wagers on such racing transmissions

in the absence of a written agreement between the "host racing association" and the "horsemen's group." The IHA does not give standing to a "host racing association" to seek redress against a "horsemen's group" due to the inability of the host racing association to successfully negotiate an agreement.

(Defs.' Mem. of Law in Support of Mot. to Dismiss ¶ 14) (footnotes omitted).

First, Plaintiff Hialeah has clearly alleged in its Second Amended Complaint that it will suffer economic injury from Defendants' refusal to give consent to simulcasting for betting purposes. "Revenues obtained by Plaintiff pursuant to the off-track wagers placed as a result of the broadcast of its signal make up a large percentage of the total revenues received by the Plaintiff for its racing meet." (2nd Am.Compl. ¶ 45. *See also* 2nd Am. Compl. ¶ 80, listing injury to Plaintiff's business "[a]s a direct result of Defendant's conduct....") Without the additional revenues from off-track transmissions and betting, Plaintiff Hialeah believes it will have difficulty staying in business.

Second, Plaintiff Hialeah is not proceeding under a cause of action provided for by the IHA, but is proceeding under federal and state antitrust laws. Whether the IHA confers standing to Plaintiff Hialeah is irrelevant to the causes of action brought by Plaintiff in its Second Amended Complaint, and Defendant does not challenge that Plaintiff Hialeah has standing to bring antitrust causes of action against Defendants. Consequently, the Court finds that Plaintiff Hialeah has standing to bring its current action against Defendants.

### 3. Anti–Competitive Activity

#### a. Harm to Competition

■ Defendants' remaining arguments revolve around the applicability of an antitrust cause of action to the allegations in Plaintiff's Second Amended Complaint. Initially, the Court recognizes that the IHA provides no immunity to any party from federal antitrust law, nor does the legislative history indicate that this was Congress's intent:

The legislative history further provides:

This legislation in no way modifies or affects the scope or application of the antitrust laws of the United States, nor does it confer upon any person or persons the right to enter into any agreement in restraint of trade which would be prohibited under the antitrust laws.

*Alabama Sportservice,* 767 F.Supp. at 1578 (quoting H.R.Rep. No. 1733, 95th Cong., 2d Sess., at 4 (1978) U.S.Code Cong. & Admin.News 1978, pp. 4132).

■ Next, turning to the heart of Defendants' argument, the Court first recognizes that section 1 of the Sherman Antitrust Act provides that, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. § 1 (1995).[4] Defendants allege that Plaintiff's Sherman Antitrust Act action must be dismissed because "Plaintiff has failed to state a basis for relief under Section 1 of the Sherman Act [in that] it has failed to allege that the acts of the FHBPA are and were injurious to competition in general." (Defs.' Mem. of Law in Support of Mot. to Dismiss at 11.) (*See American Key Corp. v. Cole Nat'l Corp.,* 762 F.2d 1569, 1579 n. 8 (11th Cir.1985) ("Harm to competition is a necessary element of all private antitrust suits under Sections 1 and 2 of the Sherman Act....")). In response, Plaintiff Hialeah argues that it has alleged an injury to competition, because its theory is that Defendants have engaged in a "concerted refusal to deal" with Plaintiff Hialeah, one of the recognized "unreasonable restraints of trade" prohibited by section 1 of the Sherman Act which have been determined to cause a harm to competition. *See Cha–Car,* 752 F.2d at 612–13.

The Court agrees that Plaintiff Hialeah has set forth a sufficient cause of action against Defendants under section 1 of the Sherman Antitrust Act. Plaintiff has sufficiently alleged that Defendant FHBPA's refusal to give consent consists of a concerted refusal to deal with Plaintiff Hialeah.[5] This theory can either be analyzed under a "rule of reason" (i.e., a determination as to whether the activity unreasonably harms competition), or can be declared *per se* illegal. *Id.* The Court has not yet been asked to decide whether to apply a rule of *per se* illegality or rule of reason analysis to this action, but under either analysis, if Plaintiff Hialeah is able to establish that Defendants have engaged in a concerted refusal to deal or in a group boycott, then Plaintiff Hialeah will have established a harm to competition.

### b. Single Entity

■ Second, Defendants argue that Plaintiff Hialeah has failed to set forth a cause of action under section 1 of the Sherman Antitrust Act upon which relief can be granted because Plaintiff Hialeah cannot establish that more than one entity is involved in the allegedly actionable activity. "To establish a violation of section 1 of the Sherman Act, a plaintiff must prove that two or more distinct entities agreed to take action against him." *Bolt v. Halifax Hosp. Medical Center,* 891 F.2d 810, 818 (11th Cir.1990), *cert. denied,* 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990). Defendants argue that they are really one entity—the FHBPA—and, therefore, in not giving consent to Plaintiff Hialeah to simulcast its races for betting purposes, Defendants have not conspired with anyone else to restrain trade.

While the FHBPA may be one entity, it is composed of a number of competitors that can act together in a concerted fashion. Therefore, the actions of a number of horsemen, taken by one association representing them, can be a concerted action such as to meet the definition of a Sherman Act violation. Trade associations have been recognized as being comprised of competitors. *See Alabama Sportservice,* 767 F.Supp. at 1580. Consequently, merely because the members of the FHBPA have acted with one unified vote instead of individually withhold-

---

4. Of course, since "every contract could be considered a restraint of trade, the Sherman Act prohibits only 'unreasonable restraints of trade.'" *Cha–Car, Inc. v. Calder Race Course, Inc.,* 752 F.2d 609, 612 (11th Cir.1985) (quoting *National Collegiate Athletic Association v. Board*

*of Regents of University of Oklahoma,* 468 U.S. 85, 98–100, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984)), *reh'g denied,* 762 F.2d 1023 (11th Cir. 1985).

5. Also termed a "group boycott."

ing consent does not, at this time, remove their actions from enforcement under section 1 of the Sherman Antitrust Act.

Consequently, Defendants have failed to meet their burden of establishing that Count I of Plaintiff Hialeah's Second Amended Complaint, alleging a violation section 1 of the Sherman Antitrust Act, does not allege a cause of action upon which relief can be granted.

### 4. State Antitrust Cause of Action

In addition to Plaintiff's Sherman Antitrust Act cause of action at Count I, Plaintiff Hialeah's Second Amended Complaint also alleges a cause of action at Count II for violation of the Florida Antitrust Act of 1980, which provides that, "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." FLA.STAT. ch. 542.18 (1995). This language is nearly identical to section 1 of the Sherman Antitrust Act. Recognizing this, Florida's antitrust law states that, "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes." FLA.STAT. ch. 542.32 (1995).

Defendants' sole basis for seeking the dismissal of Plaintiff's Florida Antitrust Act cause of action is that, because Plaintiff Hialeah's Sherman Act cause of action is untenable based on federal law, so, too, must Plaintiff's Florida antitrust action be untenable when that same federal law is applied to it. "Because Plaintiffs [sic] have failed to state a claim upon which relief may be granted under Section 1 of the Sherman Act, they have similarly failed to state a basis upon which relief may be granted under the Florida Antitrust Act of 1980." (Defs.' Mem. of Law in Support of Mot. to Dismiss ¶ 27.) As the Court, however, has held that Defendants have failed to meet their burden of establishing that Count I of Plaintiff Hialeah's Second Amended Complaint does not allege a cause of action upon which relief can be granted, Defendants have also failed to meet their burden as to Count II.

### 5. Challenge to Constitutionality

Plaintiff Hialeah's third and final cause of action challenges the constitutionality of the IHA as it is applied to these facts.[6] Plaintiff Hialeah alleges that because the IHA, as applied, is void for vagueness, bears no rational relationship to legitimate government goals, and is violative of substantive due process rights, the Court should declare the IHA unconstitutional.

Defendants moved to dismiss Count III of Plaintiff Hialeah's Second Amended Complaint on the grounds that, because the Sixth Circuit in *Kentucky Division* has declared that the IHA is constitutional, the additional language "as applied" to the current challenge to constitutionality does "absolutely nothing to make these claims tenable." (Defs.' Mem. of Law in Support of Mot. to Dismiss ¶ 28.) In short, Defendants' sole basis for dismissal of Count III is that, "[T]hese issues have all been considered and rejected by the Sixth Circuit Court of Appeal." (*Id.*)

■ A decision of a sister circuit court of appeals is not binding precedent on a district court in another circuit, but is merely persuasive authority. *See Generali v. D'Amico,* 766 F.2d 485, 489 (11th Cir.1985). Therefore, Defendants cannot establish that Plaintiff's cause of action fails to state a cause of action upon which relief can be granted, as any district court outside of the Sixth Circuit could disagree with the Sixth Circuit's analysis and declare the IHA unconstitutional. Because Defendants have not raised any other grounds for dismissal of Plaintiff's Count III other than that the Sixth Circuit's decision should preclude it, Defendants have failed to meet their burden of establishing that Plaintiff's Count III fails to state a cause of action upon which relief can be granted, and Defendants' motion to dismiss must be denied as to this Count. After more discovery, and at the summary judgment stage, the Court will examine the constitutionality of the IHA, keeping in mind the persuasive effect of the Sixth Circuit's decision.

---

6. The Court has granted the United States of America leave to intervene in this action so that it may defend Plaintiff Hialeah's challenge to the constitutionality of the IHA.

### C. Plaintiff Hialeah's Motion to Dismiss Count I of Defendants' First Amended Counterclaims

■ The Court finally turns to Defendants' Counterclaim and the challenge made to it by Plaintiff Hialeah. In Count I of its First Amended Counterclaims for Damages, Injunction and Declaratory Relief ("Amended Counterclaims"), Defendant FHBPA alleges that the "FHBPA has suffered, and will continue to suffer, significant financial losses resulting from the excessive takeout of HIALEAH INC. and its refusal to bargain in 'the regular contractual process' over the takeout. . . . The past and continuing violations of the IHA stated above entitles counterplaintiff FHBPA to relief under 15 U.S.C. § 3006. . . ." (Am.Counterclaim ¶¶ 11–12.)

In its Motion to Dismiss Count I of Defendants' Amended Counterclaims, Plaintiff Hialeah argues that § 3006 of the IHA cannot be the basis for a cause of action against it because Defendant FHBPA has given its consent to the acceptance of off-track wagers. Therefore, because Defendants cannot allege that a violation of the IHA has occurred, they cannot bring an action against Plaintiff Hialeah for the violation of the IHA.

■ The Court agrees. Section 3006(a) provides that "the horsemen's group may commence a civil action against any person alleged to be in violation of this chapter. . . ." § 3006(a). The question then becomes whether Defendant FHBPA's action alleges a violation of the IHA by Plaintiff Hialeah. It does not. The IHA only requires that the *consent* of the horsemen's group be obtained before bets can be taken at an off-track site, and Defendants concede that that consent was obtained. The IHA does not limit the amount of takeout a horse racing association can demand, nor does it impose on a horse racing association a requirement to negotiate for such consent by some standard defined by Defendant FHBPA as "the regular contract process." Accordingly, taking Defendant FHBPA's allegations in Count I of its Counterclaim as true, Defendant FHBPA's statements that Plaintiff Hialeah is taking an excessive takeout and is refusing to bargain in the regular contract process does not adequately state a violation of the IHA such that

relief may be granted. Consequently, Count I of Defendant FHBPA's Counterclaim must be dismissed.

## III. CONCLUSION

Based on the preceding analysis, it is hereby

**ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted, filed March 28, 1995 (D.E. # 78), is **DENIED.**

2. Plaintiffs' Motion to Dismiss Count I of First Amended Counterclaims for Damages, Injunction and Declaratory Relief for Failure to State a Claim Upon Which Relief Can be Granted, filed May 27, 1994 (D.E. # 26), is **GRANTED.**

DONE and ORDERED.