**CHA–CAR, INC., a Florida Corp. for profit, Carmine Andrietta, and on behalf of others similarly situated, Plaintiffs-Appellants,**

v.

**CALDER RACE COURSE, INC., etc., et al., Defendants-Appellees.**

No. 84–5524.

United States Court of Appeals, Eleventh Circuit.

Feb. 8, 1985.

Joseph S. Paglino, Miami, Fla., for plaintiffs-appellants.

Arnaldo Velez, Taylor, Brion, Buker & Greene, Miami, Fla., for defendants-appellees.

Before HILL, KRAVITCH and SMITH[*], Circuit Judges.

JAMES C. HILL, Circuit Judge:

This antitrust case, which alleges a concerted refusal to deal in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, arises from an unusual factual situation involving thoroughbred horse racing tracks in Florida. This appeal raises a single issue that has continually confronted federal courts: whether to apply a *per se* illegal standard or a rule of reason standard in evaluating an alleged combination in restraint of trade under section 1.

## I. BACKGROUND

Defendants/appellees Calder Race Course, Inc. (Calder) and Tropical Park, Inc. are independently owned and operated race track corporations. Both corporations provide horse racing competition to the public on certain dates which are assigned by the State of Florida. Calder operates its races during the summer and Tropical Park operates during the winter; both run their races on a track owned by Calder. The two corporations have interlocking officers, although their boards of directors are different. Defendant/appellee Noe is president of both Calder and Tropical Park,

and defendant/appellee Meyocks is the racing secretary for both companies.

The race track owned by Calder includes on-track stables, containing about 1800 stalls, in which horses can be quartered during the racing periods.[1] These stall spaces are provided at no charge to horse owners and trainers, who must apply for stalls prior to each racing period. It is undisputed that the number of horses for which applications are submitted each racing period exceeds the number of available, on-track stalls. These stall spaces are apparently subjectively allocated among the applicants by Meyocks, based in large part on his belief as to the quality of the horses.[2] Defendants thus might arbitrarily assign twenty stall spaces to one trainer while denying even one space to a similarly situated trainer.

Trainers who are not provided with free, on-track stall space are still permitted to have their horses compete in races held by the defendant corporations. However, they must board their horses off the race track premises, and the horses then must be transported into the track on the day of a race and removed shortly thereafter. In addition, these horses do not receive certain other amenities which are available to the horses boarded at the track. Plaintiffs allege that it costs these trainers approximately $100 per racing day for boarding each horse, transportation to and from the track, and associated expenses.

Plaintiffs/appellants in this case represent a class of thoroughbred race horse trainers competing for purses at the defendant race tracks who were denied access to free, on-track stall space at the defendant tracks. They allege that the defendants restrained the trade of the plaintiffs in violation of section 1 of the Sherman Act by conspiring or combining together to refuse to deal with the plaintiff

---

[*] Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

**1.** Tropical Park apparently owns about 200 of these stalls, and Calder owns the rest; but each corporation utilizes all of the stalls during their seasonal racing periods.

**2.** All of the horses for which applications are submitted apparently meet the qualifications required for participating in thoroughbred racing in Florida.

class as to the assignment of free stall space, which space was given to favored competitors of the plaintiffs.

At the trial of the case, the district court declined to give the plaintiffs' requested jury instructions on *per se* illegality, determining that the refusal to deal alleged in the complaint and proved at trial did not merit such an instruction. Instead, the court charged that a violation of section 1 would be established only if the jury found that the restraint of trade was "unreasonable." [3]

Special interrogatories were submitted to the jury. The jury found that the method of assigning stall space at the race meets was the result of a combination or conspiracy between two or more of the defendants; and that this allocation method constituted a restraint of the trade or business engaged in by the horse trainers represented by the plaintiffs.[4] However, the jury determined that the method of assigning spaces was *not* unreasonable under the circumstances disclosed by the evidence in this·case. The court thus entered judgment for the defendants, and plaintiffs appealed.

## II. DISCUSSION

At the outset we note that neither of the parties has had a transcript of the trial evidence included in the record on appeal. This makes it impossible for us to review what was proved at trial, and even makes it difficult to set forth precisely the facts of the case. To the extent that the facts and circumstances surrounding this case are not disclosed by the admissions and stipulations of the parties, we must presume that the case proved at trial was a case which authorized the instructions given by the court and the findings of the jury. Therefore, we assume that the actions in this case constituted a combination in restraint of trade (in the form of a concerted refusal to deal) which was not unreasonable; and we go on to consider only whether, under the circumstances of this case as shown by the limited record before us, the district court correctly determined that the rule of reason standard, rather than a rule of *per se* illegality, governed the plaintiffs' claim. We conclude that the district court was correct in instructing the jury under the rule of reason.

### A. *Legal Principles.*

■■■ Since every contract could be considered a restraint of trade, the Sherman Act prohibits only "unreasonable restraints of trade." *National Collegiate Athletic Association v. Board of Regents of University of Oklahoma,* — U.S. —, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984) [hereinafter cited as *NCAA* ]. Generally, a rule of reason analysis is applied in a section 1 business combination situation.[5] *United States v. Topco Associates, Inc.,* 405 U.S. 596, 606–07, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972). However, a rule of *per se* illegality has been applied to certain categories of conduct which are "manifestly anti-competitive." [6] *Continental T.V., Inc. v. GTE Sylvania,* 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *see NCAA,* 104 S.Ct. at 2960, 2962. Since under a *per se* analysis there is no inquiry into possible justifications for the challenged restraint, "care must be taken that

---

3. The court defined an "unreasonable" restraint as one which is intended to prejudice the public interest in open and unrestricted competition, or which actually tends to prejudice this interest.

4. The court found, as a matter of law, that the "effect on interstate commerce" requirement of section 1 had been established in the case.

5. Under the rule of reason, a restraint will be held illegal only if it unreasonably harms competition. *See NCAA,* 104 S.Ct. at 2962; *Topco,* 405 U.S. at 606–07, 92 S.Ct. at 1133.

6. The "touchstone" of *per se* illegality is the anti-competitive market impact resulting from the type of restraints in question. *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.,* 710 F.2d 752, 777–78; *see NCAA,* 104 S.Ct. at 2959–62. Some examples of *per se* illegal restraints are price-fixing agreements, and horizontal divisions of markets between competitors. *See Construction Aggregate,* 710 F.2d at 772.

the challenged conduct fits into a [*per se*] proscribed category without distortion." *M & H Tire Co. v. Hoosier Racing Tire Corp.*, 733 F.2d 973, 977 (1st Cir.1984). The *per se* doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing. *Continental TV*, 433 U.S. at 58–59, 97 S.Ct. at 2561–62; *Consultants & Designers, Inc. v. Butler Service Group*, 720 F.2d 1553, 1561–62 (11th Cir.1983); *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 778 (11th Cir.1983).

■ A concerted refusal to deal is generally subject to a rule of *per se* illegality. *Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).[7] However, a confusing array of exceptions and qualifications to this rule have developed, and case law in this area is unsettled. It seems fair to say that certain categories of concerted refusals to deal are *per se* illegal, while other situations will normally be judged under the rule of reason. *See Consultants & Designers*, 720 F.2d at 1561 (labeling of a restraint as a group boycott doesn't eliminate necessity of determining whether it is a naked restraint of trade with no purpose except stifling competition); *E.A. McQuade*

*Tours, Inc. v. Consolidated Air Tour Manual Committee*, 467 F.2d 178, 185–88 (5th Cir.1972), *cert. denied*, 409 U.S. 1109, 93 S.Ct. 912, 34 L.Ed.2d 690 (1973);[8] II Kintner, Federal Antitrust Law § 10.31 (1980); *cf. M & H Tire*, 733 F.2d at 977 (noting that there has been much debate over the extent to which *per se* treatment of concerted refusals to deal is appropriate outside of the traditional horizontal group boycott situation).

### B. *The Present Case.*

Appellants argue that they are economically harmed by the defendant race tracks' conspiracy to exclude them from the use of free, on-track stall space, and that the rule of *per se* illegality therefore must be applied. We disagree. In our view, the unique circumstances present here do not sufficiently resemble those arrangements which have been considered to be *per se* illegal in other cases.

■ The present case does not amount to a classic horizontal combination in restraint of trade. A horizontal restraint is "an agreement *among competitors* on the way in which they will compete with one another." *NCAA*, 104 S.Ct. at 2959 (emphasis added); *see Construction Aggregate*, 710 F.2d at 774. Such a horizontal restraint in the form of a concerted refusal to deal is a classic example of a *per se* illegal practice.[9] *M & H Tire*, 733 F.2d

7. In *Klor's*, a retail appliance store sued another retailer and manufacturers and distributors of appliances alleging a conspiracy not to sell to the plaintiff, or to sell only at discriminatory prices and unfavorable terms. The Supreme Court held the alleged conduct to be a violation of the Sherman Act and remanded for trial, stating that, "[g]roup boycotts, or concerted refusals by traders to deal with other traders, have long been held to be" in the category of *per se* illegal conduct. 359 U.S. at 212, 79 S.Ct. at 709.

8. In *McQuade*, the Fifth Circuit set forth three categories of cases where collective refusals to deal have been held to be *per se* illegal: first, horizontal combinations among traders at one level of distribution, whose purpose is to exclude direct competitors from the market; second, vertical combinations among traders at different marketing levels, designed to exclude from the market direct competitors of some

members of the combination; and third, combinations designed to influence coercively the trade practices of boycott victims, rather than to eliminate them as competitors. 467 F.2d at 186–87. The court felt that the rule of reason should be applied to other types of collective refusals to deal, if no elements of exclusionary or coercive conduct are present. *Id.* at 187. *But see Construction Aggregate*, 710 F.2d at 777–78 (current touchstone of *per se* illegality is market impact of the restrictions, rather than the presence of exclusionary conduct).

9. However, there are even exceptions to the *per se* rule in this situation. For example, certain forms of self-regulation by cooperative organizations such as trade associations and sports organizations will be found exempt from *per se* analysis. II Kintner, Federal Antitrust Law, § 10.34; *see e.g., NCAA*, 104 S.Ct. at 2961; *see generally, M & H Tire*, 733 F.2d at 980–984

at 977; *see Construction Aggregate,* 710 F.2d at 774–76.[10] In the immediate case, the defendant race tracks are *not* competitors. Calder operates its races during the summer, and Tropical Park operates its races in the winter: although the two enterprises operate on the same market level within the same geographic area, they never compete for customers or for horses.[11] Therefore, this is not a horizontal combination situation. The fact that the combining group is not drawn from people who compete economically among themselves is a factor militating in favor of a rule of reason rather than a *per se* analysis; "such a combination is less likely to have been generated by an anti-competitive design—some other motive is at work which must be weighed against any incidental anti-competitive effects flowing from the combination." *M & H Tire,* 733 F.2d at 979 n. 2.

■■■■■ Nor is the combination alleged in this case a vertical restraint.[12] Here we have the rather unique situation of a combination between two entities operating at the same market level, within the same industry and the same geographic area, which do not compete. The novelty of such a situation weighs against the application of a *per se* rule. *M & H Tire,* 733 F.2d at 977, 979.

There is no showing that the restraints alleged in the present case have or will result in price-fixing, output limitations,[13] or any other anticompetitive effects which might indicate the existence of a *per se* violation.[14] Nor is there any indication that the appellees are attempting to coerce the trade practices of appellant trainers in any way. *Compare Yoder Brothers, Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1364–65 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977) (*per se* violation when defendants refuse to deal with boycott victims in order to coercively influence the trade practices of the victims).

■■■■■ In fact, the conduct complained of in the instant case might well be legitimate business decisions. Because a limited number of stalls must be allocated among a greater number of horses, some horses will be "excluded" (denied a stall) and some trainers thus harmed economically no matter how the allocation decisions are made. Thus, it cannot be an antitrust violation merely to assign stalls to some horses and not to others.[15] Appellants do not dispute

---

(discussion of antitrust law relating to sports regulation).

The combination alleged in the present case does not fall within the sports regulation exception. This exception generally applies in a situation where a regulatory organization sets forth rules and procedures essential to the existence of or survival of a sport. *See, e.g., NCAA,* 104 S.Ct. at 2961; *M & H Tire,* 733 F.2d at 981.

**10.** *Construction Aggregate* sets forth three categories of horizontal arrangements which warrant *per se* prohibitions. 710 F.2d at 775. Since we conclude that the combination in the present case is not "horizontal," we need not consider the application of those categories to this case.

**11.** Appellants contend that the race tracks compete against each other for the assignment of racing dates by the State of Florida. On the record of the case as presented to us, this contention is doubtful. The fact that the two corporations have interlocking officers and operate on the same track negates any inference that the corporations compete for racing dates: it seems more likely that one corporation was specifically set up to hold racing meets in the summer,

while the other was specifically set up to hold racing meets in the winter.

**12.** A vertical restraint is a combination of entities operating at different levels of the market structure, such as manufacturers and distributors. *Oreck Corp v. Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir.1978) (en banc), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1979). If the appellants had alleged a combination between the race tracks and the "favored" trainers who received on-track stall space, that would have qualified as a vertical restraint.

**13.** Practices that result in price-fixing and/or output limitations are often condemned as *per se* illegal. *See NCAA,* 104 S.Ct. at 2960.

**14.** The refusal to allocate free, on-track stall space to the appellants does not seem to affect the quantity or quality of the horse races, since appellants' horses are still permitted to participate in the races held by the defendant tracks.

**15.** Kintner states that concerted refusals to deal have "been held subject to the rule of reason where the refusing parties are a horizontal com-

the fact that some horses will be excluded no matter how the stalls are allocated; their complaint essentially is that the appellees' arbitrary, subjective method of allocating the stalls discriminates against (or could lead to discrimination against) certain trainers.[16] We think that this goes to the reasonableness of the restraint, and not to whether the restraint should be judged under the *per se* rule as opposed to the rule of reason.

Because of the lack of any horizontal combination, the apparent lack of any anticompetitive market impacts or coercive conduct, and the unique factual circumstances of this case, we conclude that the district court correctly determined that the appellants' claim should be judged under the rule of reason. Because of the insufficiency of the record on appeal, and because the issue was not raised by the appellant, we cannot and will not review the jury's finding that the restraint was reasonable under the circumstances.

For the foregoing reasons the judgment of the district court is

AFFIRMED.

bination of traders which refuse to deal with a non-competing party at another level of competition." II Kintner, Federal Antitrust law, § 10.33. In such a situation, the parties involved in the combination are not competing with those alleging a boycott, and such actions are oftentimes legitimate business decisions. *Id.* This seems to be somewhat descriptive of the situation in our present case, except that here the combination is not even between horizontal competitors.

The *McQuade* case, 467 F.2d 178, is cited by Kintner in § 10.33, and supports an application of the rule of reason in the present case. In *McQuade,* a committee of airline representatives who published a listing of tours refused to list some of the plaintiff tour operator's tours in their publication. The Fifth Circuit applied the rule of reason and determined that the defendant committee's refusal to list the tours was reasonable, in part because the refusal was based on legitimate business objectives. *Id.* at 187–88.

16. The record of this case reveals no hint of any incentive on the part of the race tracks to allocate stalls to the horses of particular trainers and not to others.