Patrick **CATRONE**, Plaintiff,

v.

**OGDEN SUFFOLK DOWNS, INC.,** et. al., **Defendants.**

Civ. A. No. 86–1529–C.

United States District Court, D. Massachusetts.

April 5, 1988.

As Amended April 11, 1988.

David L. Kelston, Boston, Mass., for Patrick Catrone.

Michael J. Liston, Palmer & Dodge, Boston, Mass., and Jack Kaplan and Gloria M. Gonzalez, Carter, Ledyard & Milburn, New York City, for defendants Thoroughbred Racing Protective Bureau, Thoroughbred Racing Assn, Wickman, Berube and Graf.

Alan R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for defendants Ogden Suffolk Downs and O'Malley.

Anne Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for defendant New Suffolk Downs Corp.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff brought this suit alleging violation of the Sherman Act, 15 U.S.C. § 1, denial of his constitutional rights in violation of 42 U.S.C. § 1983, interference with business relationships, and defamation. The action is now before the court on defendants' motion for judgment on the pleadings, and defendants' motion for summary judgment.

## I. Background

The plaintiff, Patrick Catrone, is a race horse trainer who has raced horses in Massachusetts, New York, New Hampshire, Rhode Island, Delaware, Florida, and Maryland. In 1971, the plaintiff was suspected of running ringers at several racetracks.[1] These incidents were investigated by the defendant Paul Berube in his capacity as field investigator for the defendant Thoroughbred Racing Protective Bureau (TRPB). The TRPB is a corporation formed by the Thoroughbred Racing Association (TRA) to provide informational and investigative services to members of the TRA. Consequently, the plaintiff was indicted in federal court for violation of 18 U.S.C. § 2314.[2] The plaintiff was acquitted of this charge. Despite his acquittal, the defendant Ogden Suffolk Downs, owners and operators of Suffolk Downs race track, refused Catrone permission to race there. Catrone then sued Ogden Suffolk Downs ("Ogden") to force them to accept his entries. The federal district court issued an injunction prohibiting Ogden from refusing to allow Catrone to race at the track.[3] *See Catrone v. Massachusetts State Racing Commission*, 404 F.Supp. 765 (D.Mass. 1975). As a result of the court order, Catrone was allowed to race at Suffolk Downs in 1975 and 1976.

The TRPB, however, continued to investigate Catrone in connection with the running of ringers, and allegedly revealed their suspicions to numerous members of the racing community. In 1976, the plaintiff was denied a trainer's license by New Hampshire as a result of the TRPB's allegations and of evidence presented by defendant Graf, who was at that time also president of New Hampshire's only flat

---

1. A ringer is a fast horse that is run under the identity of a slower horse.

2. 18 U.S.C. § 2314 prohibits interstate transportation of forged documents. Catrone was charged with interstate transportation of a false

foal certificate in connection with the running of ringers.

3. On appeal, the court's decision was vacated in part, but the injunction was allowed to stand.

track. This denial, in turn, led the Massachusetts Racing Commission (MRC) to deny Catrone a trainer's license for 1977.[4] New Hampshire, and consequently Massachusetts, continued to deny Catrone a license until 1980, when New Hampshire ceased issuing licenses due to the destruction of the state's sole track.

In 1981, Catrone applied for, and received a license from the MRC. After the plaintiff raced twice at Suffolk Downs in 1981, O'Malley informed him that he would again be excluded from Suffolk Downs. This exclusion was premised on the same information that had led to Catrone's exclusion, that is, the allegations by Berube, Wickman, Graf, and the TRPB of running ringers. In 1982, the plaintiff was again licensed by the MRC, but excluded by Ogden. Catrone thereupon appealed this exclusion to the MRC.[5] The MRC upheld Ogden's decision, and the MRC's ruling was affirmed by the Massachusetts Appeals Court. *See Catrone v. State Racing Commission*, 17 Mass.App.Ct. 484, 459 N.E.2d 474 (1984). In 1986, the New Suffolk Downs Corporation took over Suffolk Downs. O'Malley, however, continued to serve under the new owner as general manager. The new owners continued to exclude Catrone from the track on the same grounds as had Ogden.

Finally, the plaintiff claims that the allegations leading to his exclusion have been widely disseminated to other TRA-affiliated tracks by Berube, Graf, and the TRPB. As a result, the defendant has been denied the right to enter a number of these tracks. The plaintiff claims these facts show that Berube, Grap, and the TRPB have a "continuing vendetta" against the plaintiff.

## II. Discussion

### A. Defendant's Motion for Judgment on the Pleadings

The defendants Ogden Suffolk Downs, New Suffolk Down, and O'Malley move for judgment on the pleadings on counts one and two of the amended complaint for failure to state a claim upon which relief can be granted.[6] In count one, the plaintiff alleges an "unreasonable restraint of trade through a concerted refusal to deal," in violation of section one of the Sherman Act, 15 U.S.C. § 1. In count two, the plaintiff alleges that the defendants have failed to deal reasonably with him, thus unreasonably restraining trade in violation of § 1 of the Sherman Act. The defendant first contends that the plaintiff has failed to allege with sufficient specificity the existence of a conspiracy. In analysing these issues for the purposes of a motion for judgment on the pleadings, I accept as true all factual allegations of the plaintiff, and I draw all reasonable inferences in favor of the plaintiff. *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1058 (3d Cir.1980). In order to succeed on their motion for judgment on the pleadings, the defendants must clearly demonstrate that their alleged actions do not, as a matter of law, violate the Sherman Act. *General Cinema Corp. v. Buena Vista Distribution Co. Inc.*, 681 F.2d 594, 597 (9th Cir.1982).

Section one of the Sherman Act renders illegal every contract, combination, or conspiracy that restrains trade. 15 U.SC. § 1. In this case, the allegedly unlawful combination is a concerted refusal by the defendants to deal with the plaintiff. A refusal by one party to deal with another does not violate section one, however, unless the party refusing to deal is doing so in combination with at least one other par-

---

*See Catrone v. Mass. State Racing Commission,* 535 F.2d 669 (1st Cir.1976).

**4.** The MRC is the state agency responsible for overseeing the horse racing industry. The MRC is empowered to license track operators, race horse owners, trainers and jockeys. *See* M.G.L. ch. 128A § 1 et seq. Catrone alleges that state racing commissions have reciprocity agreements with one another which operate to automatically deny a trainer licenses in reciprocat-

ing state when he or she is denied a license in one state.

**5.** Under M.G.L. ch. 128A § 10A, any person denied permission to race has the right to appeal this denial to the MRC.

**6.** Under Fed.R.Civ.P. 12(h)(2), the defense of failure to state a claim may be made in a motion for judgment on the pleadings.

ty. *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Ford Motor Co. v. Webster's Auto Sales, Inc.,* 361 F.2d 874, 878 (1st Cir.1966). In proving the existence of a conspiracy or combination, the plaintiff need not prove that there was a formal agreement. Rather, a conspiracy is established "[w]here the circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement ..." *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). Thus, the essential combination or conspiracy may be found in a course of dealing or other circumstances as well as in a formal exchange of words. *Id.* at 809–10, 66 S.Ct. at 1138–39. *See also Computer Identics Corp. v. Southern Pacific Co.,* 756 F.2d 200, 203 (1st Cir.1985) (to prove a conspiracy under section one, a plaintiff must present direct or circumstantial evidence that the defendants had a conscious commitment to a common scheme).

In this case, the plaintiff has sufficiently alleged the existence of a conspiracy. The plaintiff alleges that the defendants Wickman, Berube, and Graf, as officers and employees of the TRA and TRPB, disseminated allegations that the plaintiff had run ringers, despite the fact that the plaintiff had been found not guilty of these charges. They then presented the owners of Suffolk Downs with these allegations. Based on this information, Suffolk Down refused the plaintiff permission to race even though he was licensed by the MRC. Based on these facts, a jury could reasonably infer that the defendants were acting in concert to prevent the plaintiff from racing in Massachusetts. The plaintiff's complaint, therefore, adequately alleges a conspiracy. *Compare Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266 (5th Cir.1979) (plaintiff's complaint fails to properly allege a conspiracy where the complaint sets forth no facts which tend to support his conclusory allegation).

■ While the plaintiff's complaint properly alleges the first essential element of a § 1 violation, the complaint must also set forth facts supporting the conclusion that the combination or conspiracy was an unreasonable restraint of trade. *See Standard Oil Co. v. United States,* 221 U.S. 1, 50–55, 31 S.Ct. 502, 511–14, 35 L.Ed. 619 (1911) (§ 1 proscribes only unreasonable restraints); *Cha-Car Inc. v. Calder Race Course, Inc.,* 752 F.2d 609, 612 (11th Cir.), *reh'g denied,* 762 F.2d 1023 (1985). Based on long experience, some activities have been shown to be unreasonable in all contexts. These activities are deemed to be "illegal *per se.*" *M & H Tire Co. v. Hoosier Racing Tire Corp.,* 733 F.2d 973, 977 (1st Cir.1984). If the alleged activity does not fall within this category of *per se* illegality, the activity will be deemed unlawful only if it is deemed unreasonable in the particular context of the case. This latter test is known as the rule of reason analysis. *United States v. Topco Associates,* 405 U.S. 596, 606–7, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1971). If the rule of reason analysis applies, the plaintiff must show that the anticompetitive consequences of a particular action outweigh the legitimate business purpose of the action. *Interface Group, Inc. v. Mass. Port Authority,* 816 F.2d 9, 10 (1st Cir.1987). This balancing test involves consideration of the facts peculiar to the business, the nature of the restraint and the reasons for its adoption. *United States v. Topco Associates,* 405 U.S. at 607, 92 S.Ct. at 1133. In this case, the defendants argue that the rule of reason analysis applies. The defendants further contend that the complaint fails to allege facts supporting the conclusion that the exclusion of Catrone from Massachusetts racing was unreasonable.

■ The defendant is correct in arguing that the rule of reason analysis applies here. In *M & H Tire,* 733 F.2d 973, an association of auto racers and several race promoters instituted a rule requiring drivers to use a particular type of racing tire manufactured by a particular tire manufacturer. A competing tire manufacturer filed suit, alleging a group boycott in violation of § 1. The plaintiff argued that, as a

group boycott, the rule was illegal *per se*. In holding that the rule of reason analysis applied, the court compared the facts of this case to the facts of classical group boycotts. The court first noted that the classic group boycotts are horizontal boycotts, that is, competitors at one level combine to limit competition at the same level. *Id.* at 977. In *M & H Tire*, the boycott was vertical, and as such, did not fit the classic paradigm of boycotts that had previously been found unlawful. *Id. See also Borger v. Yamaha International Corp.*, 625 F.2d 390 (2d Cir.1980) (rule of reason analysis applies to vertical boycotts); *Gough v. Rossmoor Corp.*, 585 F.2d 381 (9th Cir. 1978), *cert. denied* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979) (rule of reason analysis applies in vertical boycotts). The court also noted that courts are reluctant to impose the *per se* rule in a sports context. *Id* at 980.

Applying these principles to this case, I conclude that the rule of reason analysis applies. Although the plaintiff alleges a concerted refusal to deal, which has been held to be *per se* illegal, *see, e.g., Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389, *reh'g denied*, 375 U.S. 870, 84 S.Ct. 26, 11 L.Ed.2d 99 (1963), this case does not fit the paradigm for such refusal to deal cases. Cases involving refusals to deal which have been deemed illegal *per se* have been instances in which the refusal to deal is utilized to implement a *per se* illegal restraint of trade, such as price fixing, conspiracy to eliminate discounters, or horizontal conspiracy to allocate markets. Julian O. von Kalinowski, 2 *Antitrust Laws and Trade Regulation Laws and Trade Regulation* § 6C. 02[2]. Here, the plaintiff does not allege any such unlawful purpose behind the defendants' refusal to deal. Nor does this case involve a horizontal boycott. None of the defendants are in competition with the plaintiff. Only the Suffolk Downs defendants had a possible direct economic interest in seeing the plaintiff race. Finally, this refusal to deal is in the context of sports regulation. Clearly, this case does not involve a paradigm refusal to deal. Rather, this case is analogous to the *M & H Tire* case. Therefore, the rule of reason analysis applies.

To state a claim under § 1, the plaintiff must allege facts from which it can be determined that the allegedly unlawful conduct was injurious to the competitive process, and therefore unreasonable. *Larry R. George Sales Co.*, 587 F.2d at 273. *See also Interface Group Inc., v. Mass. Port Authority*, 816 F.2d 9 (1st Cir. 1987) (affirming dismissal of the complaint where the plaintiff failed to make any plausible allegations that the activity injured competition). In this case, though, the plaintiff has failed to set forth any facts which show that his exclusion from racing lessened, or could potentially lessen, interstate commercial competition in any way. The plaintiff does not state with whom he is competing or in what market he is competing. It certainly cannot be said that he is competing with any of the defendants. He does not allege that the defendants had any economic interest in excluding him from racing. To the contrary, one would expect that it is in the defendants' economic interest to *allow* the plaintiff to race. The plaintiff does not allege that the defendants have increased their market power as a result of the exclusion. In short, under the facts set forth, it is not reasonably conceivable that the defendants' actions even implicate a competitive market, much less injure that market. The plaintiff's complaint establishes an injury to him alone. Such an injury, however, does not implicate the Sherman Act. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 540 (1962). Since the defendants' alleged actions do not affect economic competition in interstate thoroughbred racing, their actions were not unreasonable as a matter of law. As such, count one fails to state a claim under § 1 of the Sherman Act. *Id. See also Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549 (7th Cir.1980) (affirming dismissal of the complaint because plaintiff failed to set forth facts showing anticompetitive effect).

In count two of his amended complaint, the plaintiff alleges that O'Malley, Ogden Suffolk Downs, and New Suffolk Downs,

as owners and operators of Massachusetts' only flat track, have unreasonably denied him use of an essential facility. This failure to deal reasonably, he claims, is an unreasonable restraint of trade in violation of § 1. The actions on which the plaintiff rely are exactly the same as those relied upon in count one.

As noted above, § 1 only proscribes unreasonable restraints of trade. This proscription does not require the defendants to make rational or ethical decisions, as the plaintiff contends. *B & B Oil & Chemical Co. v. Franklin Oil Corp.*, 293 F.Supp. 1313, 1316–17 (E.D.Mich.1968). Rather, it only requires that the legitimate reasons for the defendants' actions outweigh their anticompetitive effect. *Interface Group, Inc.*, 816 F.2d at 10. Absent an anticompetitive effect, even the most irrational or ill-willed business behavior does not violate the Sherman Act. *See Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266 (5th Cir.1979) (defendants' actions, while possibly constituting extortion, do not violate the Sherman Act since there was no injury to competition); *Mogul v. General Motors Corp.*, 391 F.Supp. 1305 (E.D.Pa. 1975), *aff'd*, 527 F.2d 645 (3d Cir.1976) (auto manufacturer's failure to deal fairly and equitably with plaintiff does not violate § 1 where there is no anticompetitive effect). As discussed, however, the defendants' actions have no actual or potential anticompetitive effect, and are therefore not unreasonable.

The plaintiff attempts to bring this case within the ambit of the Sherman Act by analogizing this case to two other cases in which a violation of § 1 was found. In *Eastern States Retail Lumber Dealers Ass'n. v. United States*, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490 (1913), retail lumber dealers circulated among themselves reports identifying wholesalers who attempted to sell directly to consumers, thus competing with the retailers. The retailers would then refuse to deal with those wholesalers. *Id.* at 609. The Supreme Court held that the actions of the retailers violated § 1. The plaintiff argues that in this case, as in *Eastern States*, the plaintiff was prevented from pursuing his trade because of widely circulated information.

The plaintiff's analysis is faulty, however, in that it focuses solely on the nature of the defendants' actions, and ignores the effect of those actions. In *Eastern States*, the effect of the defendants' actions was to prevent wholesalers from competing with retailers, thus allowing the retailers to maintain artificially high prices. In this case, however, there is no such anticompetitive effect. The other case on which the plaintiff relies is distinguishable for the same reason. *See Paramount Pictures v. United Motion Picture Theatre Owners*, 93 F.2d 714 (3d Cir.1937) (theatre owners organized a boycott of distributor in order to force distributor to agree to certain terms). Even assuming that the defendants have a monopoly on flat track racing facilities in the relevant market area, the plaintiff has simply failed to show how the actions of the defendants could possibly have any potential anticompetitive effect on thoroughbred racing. Therefore, the defendants' motion for judgment on the pleadings on counts one and two should be granted because the plaintiff has failed to state a claim upon which relief can be granted.

### B. Defendants' Motion for Summary Judgment

The defendant Ogden Suffolk Downs has also moved for summary judgment on the plaintiff's § 1983 claims (counts III and IV), and on the plaintiff's antitrust claims (counts I and II) on the grounds of res judicata and collateral estoppel.[7] The plaintiff first argues that the principles of res judicata and collateral estoppel cannot be applied in a straightforward manner. In *Catrone v. Mass. Racing Commission*, 535 F.2d 669, the First Circuit Court of Appeals ordered this court to abstain from deciding whether Catrone's exclusion from

---

7. As used here, res judicata is synonymous with claim preclusion, while collateral estoppel is synonymous with the term issue preclusion.

Suffolk Downs violated § 1983. The court noted that, because the need to reach the constitutional issues might be obviated by interpretation of state law, the district court should abstain until the state courts were allowed to deal with the questions of state law. In such a situation, the plaintiff argues, the state court's decision on the state law issues does not bar him from coming back to federal court to litigate the federal questions.

In *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the United States Supreme Court held that when a plaintiff brings suit in federal court, and the court abstains on *Pullman* grounds, the subsequent state court proceedings will not bar the plaintiff from coming back to federal court to resolve the federal questions. The litigant may forego this right to return to federal court, however, if he or she elects to obtain resolution of the federal issues in state court. *Id.* at 417–18, 84 S.Ct. at 465–66. In such instances, a final judgment on the merits in the state court action will have a res judicata effect on the subsequent federal court action.

█ A problem arises, though, in determining whether a litigant elected to present the federal issues to the state court for resolution, or whether the litigant was merely placing the state law issues in the proper context. In *Government & Civic Employees Organization Commission v. Windsor,* 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), the United States Supreme Court held that when a litigant seeks to have the state court interpret a statute so that the litigant could then challenge the constitutionality of that statute in federal court, the litigant must present the state court with the constitutional claims. The purpose of this requirement is to allow the state court to interpret the statute in the proper context of the constitutional issues. *Id.* at 366, 77 S.Ct. at 839. The problem, then, is distinguishing between mere "presentation" of the federal claims to the state court and attempted "resolution" of those claims in state court. One sure way a litigant may avoid this question

is to expressly reserve in the state action his right to return to federal court, thus letting the state court know that the federal questions are being presented only to comply with *Windsor. England,* 375 U.S. at 421, 84 S.Ct. at 467–68. Such an express reservation is not required, though. The ultimate question remains whether the litigant did more than required by *Windsor* and fully litigated his federal claims in state court. *Id.*

█ In this case, the state law issue on which this court grounded its abstention was whether a race track could, under M.G. L. c. 128A § 10A, exclude a trainer who was licensed to race in Massachusetts by the MRC. *Catrone,* 535 F.2d at 671. After the district court abstained, the plaintiff promptly filed a complaint against Ogden Suffolk Downs in Massachusetts Superior Court raising this specific issue. The complaint asked only for declaratory relief, and expressly noted that the case was in state court because of the federal court's abstention. The defendant answered on August 9, 1976. No further action was taken by the parties on this complaint, though, and the case was dismissed without prejudice for failure to prosecute on December 4, 1980. Were this complaint the basis for the state court's decision, the plaintiff would clearly be allowed to return to federal court with his claims.

After Catrone was reissued a license by the MRC and was subsequently again denied permission to race at Suffolk Downs, he sought review by the MRC. When the MRC found that Ogden's denial was reasonable and did not violate the state regulations, Catrone filed a complaint in Superior Court against the MRC and Ogden. In that complaint, he alleged that the actions of the MRC violated his due process rights and equal protection rights, and also were arbitrary and capricious. Catrone also alleged that the actions of Ogden were state actions under § 1983, and thus violated his constitutional rights. Catrone asked the court to order Ogden to accept his entries.

The superior court found that the MRC's decision was unsupported by the evidence, and violated Catrone's right to equal pro-

tection. The court also found that the actions of Ogden were state actions within the meaning of the federal and state constitutions. The Massachusetts Appeals Court, however, held that Ogden's actions were not state actions, and accordingly reversed the decision of the Superior Court.

On these facts, it is clear that Catrone voluntarily chose to litigate his constitutional claims in the state court, thus waiving his right to come back to federal court. Unlike the initial state complaint, the second complaint did not mention the fact that Catrone intended to return to federal court. The second complaint also went beyond the precise state law issue that led to this court's abstention. In the complaint, Catrone clearly alleged claims under the federal constitution and § 1983. As indicated by the Superior Court's findings, these federal claims were fully litigated by the parties. These facts indicate that Catrone did not intend to merely resolve a single issue of state law and then return to federal court. Rather, he voluntarily chose to have the state court resolve both state and federal issues. As such, *England* does not apply, and the principles of res judicata and collateral estoppel are applicable to this case.

■ The next question is whether any of the plaintiff's claims are barred by the doctrine of res judicata. In applying res judicata, federal courts must give state court judgments the res judicata effect prescribed by the law of that state. *Isaac v. Schwartz*, 706 F.2d 15, 16 (1st Cir.1983). In Massachusetts, res judicata prevents subsequent litigation of issues that were or could have been dealt with in an earlier litigation. *Id.; Ratner v. Rockwood Sprinkler Co.*, 340 Mass. 773, 775, 166 N.E.2d 694 (1960). The entry of a valid, final judgment on the merits extinguishes all claims that the parties have against one another and that arise out of the same transaction, or series of connected transactions, out of which the original complaint arose. *Isaac*, 706 F.2d at 16. Claims under § 1983 may be barred by prior state court actions if both actions arise out of the same transaction. *Allen v. McCurry*, 449

U.S. 90, 103–04, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980); *Pasterczyk v. Fair*, 819 F.2d 12, 13 (1st Cir.1987). In such cases, the question is not whether the plaintiff did in fact litigate his federal civil rights claim in the state court proceeding. Rather, the question is whether the plaintiff could have litigated them. *Isaac*, 706 F.2d at 17.

■ In determining whether a subsequent claim arises out of the same "transaction or series of transactions," the term "transaction" is pragmatically defined by looking at whether the facts underlying the two actions are related in time, space, origin, or motivation. *Isaac*, 706 F.2d at 17; Restatement (Second) of Judgments § 24(2).

■ Applying these principles to the present action, it is clear that the state court action bars the plaintiff from litigating his § 1983 claims against Ogden. There was a final judgment on the merit in the state court action. That suit was based on the exclusion of Catrone from Suffolk Downs in 1981. The § 1983 counts in the present suit are based on the exclusion of Catrone in 1985 and 1986. Although there is a gap of approximately four years between these exclusions, they are sufficiently related to constitute a single transaction or series of transactions. The alleged motives behind the earlier exclusion are the same as those behind the later exclusion, namely, the allegations that Catrone ran ringers, and that he had been ejected from a number of other race tracks. In a letter to the MRC, dated January 24, 1985, O'Malley stated that Ogden's decision of December, 1981 to exclude Catrone was "still in effect." Thus, in 1985, Ogden was merely standing by their prior decision, on which the state court action was based. Ogden's 1985 and 1986 refusals, and Ogden's 1981 refusal were in reality a single course of action that was decided upon in 1981 and merely continued in later years. Therefore, Counts III and IV of this current action arise out of the same transaction as the state court action did. As such, Ogden Suffolk Downs' motion for summary judg-

ment on counts III and IV should be granted.[8]

In count V of his amended complaint, the plaintiff also set forth a claim for tortious interference with advantageous business relations. At oral argument, however, the plaintiff conceded that this claim was barred on res judicata grounds. Therefore, the defendant's motion for summary judgment on Count V should be granted for the reasons discussed above.

All defendants also argue that the plaintiff is collaterally estopped from bringing the § 1983 claims, the antitrust claims, and the claim for intentional interference with business relations. I will only address the issue of collateral estoppel as it applies to the § 1983 claims, since the other claims against the defendants other than Ogden have been disposed with on other grounds.

As with res judicata, federal courts must look to state law to determine the preclusive effect of issues raised in prior state court judgments. *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 415–16. Under Massachusetts law, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372, 479 N.E.2d 1386 (1985) *quoting* Restatement (second) of Judgments § 2(1982). Moreover, Massachusetts recognizes the doctrine of defensive collateral estoppel. One who was not a party to the first action may use a determination in that action against a party who was a plaintiff in the first action. *Fidler v. E.M. Parker Co.*, 394 Mass. 534, 541, 476 N.E.2d 595 (1985); *Home Owners Federal Savings & Loan Ass'n v. Northwestern Fire & Marine Insurance Co.*, 354 Mass. 448, 455, 238 N.E.2d 55 (1968). In order for defensive collateral estoppel to apply,

the party against whom the doctrine is to be applied must have had a full and fair opportunity to litigate the issue that is to be precluded. *Fidler*, 394 Mass. at 541, 476 N.E.2d 595. See also Restatement (Second) of Judgments § 29 (1982).

█ Applying these principles to this case, it is clear that Catrone is precluded from litigating the issue of whether his exclusion from Suffolk Downs was the result of state action. Technically, the precise issue litigated in the state court was whether Ogden's actions prior to 1981 constituted state action. In this case, the precise issue is whether Ogden's actions prior to 1986 and New Suffolk Downs' actions prior to 1986 were state action. As such, there is not an exact identity of issues in the two actions. The actions alleged to constitute state actions are, however, the same in both cases. The evidence and arguments relevant to the state action issue in both cases are identical, for all practical purposes. There is no allegation that the post–1981 actions were based on any motivations not present at the time of the 1981 suit. Nor is there any allegation that the effects of the post–1981 actions differed in any way from the effects of the pre–1981 actions. In his complaint, the plaintiff himself alleges that the actions of New Suffolk Downs were merely a continuation of its predecessor, Ogden Suffolk Downs. In light of these factors, the question of state action in this case is the same issue as the state action question in the state court proceeding for the purposes of collateral estoppel. *See In Re Transocean Tender Offer Securities Litigation*, 427 F.Supp. 1211, 1221 (N.D.Ill.1977) (applying collateral estoppel despite lack of complete identity of issues, because there was substantial overlap between the evidence and arguments advanced in the two proceedings, the discovery in the prior action could reasonably be expected to embrace the present action, and the elements of the claims in-

---

**8.** The defendant contends that the antitrust claims are also barred under res judicata principles. The state court did not have jurisdiction to hear these claims, though, so there are serious questions about this view. *See Marrese v. American Academy of Orthopaedic Surgeons,*

628 F.Supp. 918 (N.D.Ill.1986) (prior state court action is not res judicata for federal antitrust claims). Because the defendant's motion for judgment on the pleadings has been granted in regards to those claims, however, I need not reach this issue in this case.

volved in the two proceedings are similar); Restatement (Second) of Judgments § 27, Comment c (1982).

In addition, the state action issue was necessarily determined in the state court proceeding after Catrone had a "full and fair opportunity" to litigate this question. In his complaint to superior court, Catrone expressly alleged that Ogden's actions constituted state action for the purposes of § 1983. The Superior Court found state action, but the Appeals Court expressly held that Ogden's actions were not state action. This issue was necessarily reached in light of Catrone's allegations of constitutional violations. Therefore, the issue of state action was necessarily decided against Catrone in a prior proceeding after a full and fair opportunity to litigate this issue. As such, Catrone is collaterally estopped from relitigating the issue against any of the defendants in this suit. Because Catrone's exclusion was not a result of state action, all defendants are entitled as a matter of law to judgment on the § 1983 claims (counts III and IV).

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. The defendants' motion for judgment on the pleadings on Counts I and II is granted.

2. The defendants' motion for summary judgment on Counts III, IV and V is granted.